Honorable judges, I'm Clayton Ike and I represent the appellate in the case of Yonemoto v. Dept of Veterans Affairs. The facts of this case is relatively simple. Between May 2005 and April 2006, Mr. Yonemoto, a manager at the Honolulu VA Center, requested email transmitted over the VA computer, an email system. Email generated by his immediate supervisor, Mr. Berg, to Mary Cronin, who was another manager. She was the head of the information technology department within the VA Center. And email generated by Dr. Stephen McBride, who was the clinical chief of staff, to Mary Cronin. And the email related to comments or transmissions that they made relating to Mr. Yonemoto. The court denied the finding, denied the disclosure on the finding by the court that the privacy interest indicated as to the three individuals who wrote the email required that Exemption 6 be applied. We submit that you don't even have to get to that finding of Exemption 6 because there were no privacy interests that were implicated. Let's see. Because pursuant to this motion that you just submitted to us the other day, you've got the email. That's correct. Unredacted. That's correct. You know everything that was said. No, we don't. We know what these four emails. That's all we're really after. I'm sorry? That's all you were after, right? We were after that plus others. That's my question. What else is there that you were after that you're still after? Well, we want other email that was related, again generated by these individuals or other supervisors within the VA Center of Honolulu that related to Mr. Yonemoto. And we don't believe that the privacy interests implicated because clearly the VA Center owns these computers. They installed the network system. They promulgated rules and regulations stating to all managers and all employees of the VA that should you use the email system, you will be businesslike, it will be related to business, it will be professional email, and there is no expectation of privacy. Well, counsel, this is the question I have, which my colleagues have to some extent suggested. As I understood it, you had a status conference on October 23rd of 2006 where you agreed that the VA would file summary judgment on some matters. That's correct. And those some matters are the ones that we have in front of us. And on those some matters, then, you got 21 pages of emails with redactions on four of the pages, one or two lines on each page. That's correct. And it's also my understanding now that you have that information. So since the district court hasn't been able to address other issues in any way, given the status conference and given what you agreed in the conference, it would seem to me this case is over. No, it's not, John. Well, then why isn't it? You got everything you wanted for what you've agreed, and the status conference was the only issue on summary judgment. What do we have left? We have the other emails that had been requested. This is an appeal from a partial summary judgment. It is not a whole summary. It's a whole summary.      It's a whole summary. And that's what we did. What we did is basically we, the plaintiff, not knowing what was in the email, felt that it was appropriate that the court at least rule on some and give its direction and its inclination as to the total. And so as a result, it was agreed that some of the email would be put forward to the court. There was no in-camera review by the court. The certification order that's before us that we agreed to when a motions panel agreed to, and the issues that were part of that seems to me have been taken care of. No, Your Honor. The issue, the finding by the court that privacy interests of these three individuals overwhelmed and required the finding that this is an Exemption 6 is an error, and we wish to have a decision related to that, that persons who use the VA email system have no privacy interests that they themselves weighed by their actions. I don't understand that at all. Because what you seem to be saying is that someone who sends an email about another employee or emails concerning employees because they're on a system where it says there's no privacy interest, therefore have nothing to do or can't be similar to personnel records and other things which do come within Section 6 exemption. So I don't, I don't, your argument seems to be that every email becomes subject to disclosure. And I don't see how this government can operate with that system. This is a new thing because the statutes were written in a different era. The statute. We have to adapt them somehow, interpret them somehow to this era of email. So what is the limiting principle here? Well, I think the limiting principle, Your Honor, is to look and see if the privacy interest is implicated. For instance, in the Hunt v. FBI case that you pointed with, you had the disclosure of the issue there was whether the privacy interest of the agent involved was implicated in an investigation that had been initiated by the requester. And she was, in fact, the investigation was of her. She was cleared. And she was not, did not voluntarily ask that this investigation take place. It was initiated by the FBI because of a complaint made by the requester. She had a privacy interest because she was not. She did not initiate the activity that caused this report to be generated. In this case, what we have is we have Mr. Yomoto claiming that he wants to know whether the email system that the government had established that he uses, as well as other coworkers, had been misused by individuals who were his managers, who had a supervisory control over his activities. And you have on- When you say misused, what do you mean? They said bad things about him or what? I think being called a mean little toady, a horse's ass, an incompetence personified, and in one of the emails disclosed but not subject to this appeal, be characterized as being a member of the all Chinese championship rubberneck team, is total misuse of the email system that is supposed to be set up to business communication. And you're supposed to use professional language and you have no expectation of privacy. Sounds like a dispute within the within the VA rather than a major case involving- Well, I think that the interest implicated is whether the agency who sets up the email system and issues regulations that warns people who use it. You are to be professional, it is to be related to business, and you have no expectation of privacy. Is private supposed to be an instrument to police the proper use of emails within government agencies? Is that where we're heading here? I think the government already monitors the proper use. I mean- Well, that's not the purpose of FOIA. The purpose of FOIA is disclosure of government records. And the disclosure is required unless the requested information clearly falls within one of the exemptions provided by Congress. And our contention is that the discussion relating to these privacy interests, these three individuals, is not implicated because they themselves, by their actions, waived it and for the agency to now argue their privacy interest seems to be disingenuous. Let me ask you one more question. Sure. There's a lot of people who want to take a lot of court actions to court, but they've got to have some standing, some hurt, some reason to bring these actions. Just because you want to fight for this particular situation doesn't say you get to. You've got to have some reason to do it. And I'm still back at this first part. You've got everything you wanted on the 21 pages of emails that you were asking that is the only thing that you agreed to bring forth at this time in front of this court. So what gives you any right to go forward? You don't have one piece of information you haven't already got. Part of the reason why we agreed to the appeal was that we felt that a ruling by this court as to the rulings of law issued by the magistrate judge were controlling. Now, if this court were to dodge its duty. It's not a matter of dodging. It's called mutinous. It's a matter of being able to look at what the underlying facts are under the law that you're challenging. And the underlying facts are you got all your information. And so, therefore, there is no reason to address this issue because I cannot look at the underlying factual information that you did not get. I have to look at that. I have to see what it is. In fact, you even suggest that the district court ought to look at it in camera, the exact stuff. So they'll know what to do. And now you're asking me to rule in the general what this law would mean when you don't even have an interest in it in front of me anymore? We do have an interest, Your Honor. What? You entered into an agreement in a status conference that you would only appeal this stuff. And it's been resolved. So why don't we go back and get all the rest of the stuff and see if it works out, and then you can come back? Thank you, Your Honor. May it please the Court, Thomas A. Helper for the Defendant's Respondents, Department of Veterans Affairs. If I could go right into this mutinous issue and maybe give a little bit of a procedural background. The bottom line is I can't tell you whether or not this case is moot right now because I'm not exactly sure what the plaintiff has received and what they're looking for in this EEO procedures, in the EEO case in which they've gotten four e-mails. Well, the order that was certified to us only dealt with these four redacted notes, correct? Yes, yes. That's now been turned over, correct? Yes. So he's got all of that. Yes. Right? There's other matters still pending in the district court. Right. Which the court hasn't ruled on. Right. But the reason that the government agreed to this particular procedure and agreed to an interlocutory appeal was we've got sort of a Venn diagram here of a massive number of e-mail requests. The plaintiff saw all kinds of word searches and different terms and wanted all those e-mails. But what he was really interested in was things that were derogatory about him. So within this huge circle, we have a smaller circle of derogatory e-mails or denigrating e-mails. Within that circle of denigrating e-mails, we have a smaller circle of the four test cases, the four e-mails that are in question directly in this appeal. So the small circle, the ruling that the court would reach in the small circle, would also apply to the middle circle of other denigrating e-mails. It would also potentially apply to the attorney's fees claim that's on the board here because plaintiff would have to show that he's the prevailing party. Obviously, as the case stands now, he's not the prevailing party. As I understand from the submission that we received the other day, these e-mails that were redacted and now turned over were turned over pursuant to some other matter, in relation to some other matter, e-mail matter, if I'm not mistaken. Yes. Now that leads me to think there's a possibility that these other e-mails might be turned over in that proceeding. Well, you've anticipated my next point because this is, again, outside the record. So why would we, you know, if there's that chance, why would we, you know, sort of offer our, you know, some sort of. . . The only reason would be the attorney's fees issue. Yeah, that's what it is. Advice of some sort. To follow up on that issue, Your Honor, it's not just a possibility. I think it's the virtual certainty, as I understand. . . So then why don't we send it back to the district court and let the district court determine whether the whole thing is moot. The only reason not to do that would be the attorney's fees issue because, again, it's a case in which the prevailing party finding would be a necessary but not a sufficient finding for a attorney's fee award. And the district court hasn't passed on, you know, sort of the other requirement. That's all the more reason why it should go back on the attorney's fees. We don't have anything to do with attorney's fees. Your Honor, I think that, you know, I'm not telling you you're wrong about that. Let me ask you a second question. Under the standard review for the VA, where we have an exemption 6, as I understand the standard is first to determine whether the district court had an actual factual basis for its decision by reviewing the underlying facts supporting the district court's decision, and we do that for clear error. As I read this record, it seems to me that nobody disputes those facts. That's right, Your Honor. So the only thing we have in front of us here is whether the actual adequate factual basis for its decision, when it has such, then I review de novo the determination whether an exemption applies. So we're really only talking whether, and as I understand it in this particular situation, exemption 6. And we're talking about personal and medical files and similar files, correct? Yes. Or personnel, sorry, not personnel. Well, in those instances, are we really arguing about our case law, which says in one instance we have four factors to consider? Are we talking about versus our case law that says only two factors to consider? Because we can't undo that. We're just a three-judge panel here. I think the result is the same, and I think that if you even look at the cases that have the middle two factors, the public interest versus the private interest, those two factors are the same in both tests. It's factors one and four. The interest of the plaintiff is factor one, and the interest of whether the plaintiff has another means of getting the same information. I think if you apply that test, the result is the same. The court's clear. Well, the honest truth is if I apply factor four, even given what we've had here, it seems to me this case goes away and doesn't decide all this stuff in any event. I think that's right. I think that if you look at factor four, which is the availability of other means to obtain the same information, clearly the plaintiff has not just a hypothetical possibility but the actual realized possibility, or he's done it. And if I could add a little bit, I think, again, outside the record, that it looks, as I understand what's happened in the EEO process, the plaintiff has had the opportunity not just to get these four e-mails, but also to submit other redacted e-mails and to determine whether or not those e-mails apply to him and determine whether or not they would fall within the middle circle that I talked about. Now, I don't know if he's done that, if he's in the process of doing that, if he's submitted all the e-mails that he thinks might be derogatory, because this is just a procedure that's only been going on for a couple of weeks. So that's the only reason I hesitate on the bootness issue, because I can't tell you for sure that he's received every derogatory e-mail that is out there on the VA e-mail system. I would like just briefly to address the basics of the case. I think there's clearly a reasonable determination by the district court that this was a similar file, and therefore we'd go right to the balancing test that the similar file determination is just a threshold, minimal determination as to whether or not an e-mail or a document can be applied to a particular individual. Here we're talking about the authors of the e-mails, so the threshold is met pretty easily there. And the balancing, as I think the court's questions earlier indicated, between private and public interest, there's virtually no public interest here, certainly not a substantial public interest. And there is, although this is office place gossip, there is an interest in government employees being able to have some privacy interest in gossiping about their co-workers, which is what happened here. I take it this would be an entirely different case if this were a newspaper reporter trying to get information about possible corruption. I mean, that's... Well, I don't think we can look at the purpose of the request. No, I'm just saying when you're talking about the public interest... Right. ...that's really the classic kind of case where there might be a public interest and it's very strong. Right, but I think here if it was a reporter saying I want to know all the people who gossiped about their co-workers, I don't think there would be a strong public interest in that. If there's some broader public issue at stake, clearly there would be. If there's an abuse at the office, there's a public interest if there's gossip. Right, and I think it's just... There's certainly in the case law discussions of whether there's an investigation into misconduct by the government. Gossip is not misconduct. It's not impropriety. So I don't think that this case falls into those categories. So I think the district court here appropriately balanced private versus public, came to the right determination. So the mail is now the substitute for the water cooler. Exactly. For better or for worse. And on the other remaining issue, on the Privacy Act issue, I don't think there's any real dispute that the documents were not stored in a system of records under Mr. Yonemoto's name, and so they're not obtainable. I've got a minute left, but unless the court has other questions. I don't appear to be. Thank you. Thank you. Does anyone have any questions that they'd like? No. All right, thank you. You have used your time. The case just argued is submitted for decision. We'll hear the next case, which is Silva v. Allstate.
judges: Schroeder, Paez, Smith